UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 07-CR-1477-L |
| Plaintiff, | ) | **ORDER FOLLOWING TRIAL** |
| v. | ) | |
| CIRILO FLORES-PEREZ, | ) | |
| Defendant. | ) | |

## I.  INTRODUCTION

A federal grand jury issued a two-count Indictment on June 12, 2007, charging Defendant, Cirilo Flores-Perez, with one count of bringing in an illegal alien for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of transporting an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  On July 25, 2007, the grand jury issued a Superseding Indictment, clarifying that Defendant was charged with aiding and abetting the bringing in of an illegal alien for financial gain, and attempting to transport an illegal alien, in violation of the same code sections.  Defendant pleaded not guilty to the Superseding Indictment on July 30, 2007.

The Defendant's jury trial began on November 6, 2007. At the close of the Government's case-in-chief, Defendant orally moved for judgment of acquittal pursuant to Rule 29, and he renewed the motion at the close of all of the evidence. Written motions were later filed. In the first written motion, Defendant focused on the absence of the material witness, arguing that the government did not establish that Mr. Benjamin Hernandez-Ramirez was an alien. In his supplemental motion, Defendant argued that the Government did not introduce sufficient evidence of aiding and abetting the offense of bringing an illegal alien into the United States for financial gain.

## II.   FACTS

The following testimony and evidence was elicited at trial. Agent Sergio Guzman testified that on May 27, 2007, while working at a fixed observation position east of the Old Port area in downtown Calexico, he saw a male climb the border fence using a lightpost on the Mexicali side of the border and run north. That male was later identified as Benjamin Hernandez-Ramirez ("alien" or "Mr. Hernandez-Ramirez"). Although Agent Guzman turned his Border Patrol vehicle around and drove into the Old Port area, he was unable to immediately locate the alien.

Agent Guzman used his radio to call for backup. The agent positioned nearby, Luis Burruel, had not seen the alien reach his location. Both agents searched the area unsuccessfully, and then returned to their surveillance positions.

Shortly after, Agent Burruel noticed the Defendant walking south on a nearby street, approaching the border fence. Agent Burruel watched Defendant walk straight to the northernmost dumpster of four dumpsters and heard him shout, in Spanish, "Get out, get out!" Agent Burruel next saw Defendant speak to some taxi drivers near the dumpsters, talk on a cellular phone, and then return to the dumpster. For approximately 30-60 seconds, Defendant dug his hand into the northernmost dumpster, again speaking loudly and saying "Get out." Afterwards, Defendant went to sit on the bench closest to the dumpsters and waited.

After some time, Mr. Hernandez-Ramirez emerged from the dumpster. Agent Burruel watched the alien walk north from the dumpster, then heard Defendant say, in Spanish, "Keep

walking" twice. Agent Burruel saw the alien look in Defendant's direction. Believing Defendant was engaged in alien smuggling, Agent Burruel used his service radio to call for additional agents to respond to the area.

Agents Christian Diaz and Luis Corona responded to Agent Burruel's call. Agent Corona observed Defendant and the alien walking north, approximately ten feet apart, parallel to one another. While Agent Corona could not hear Defendant from the car, he saw Defendant gesture with his hand, in a motion similar to pushing away from his body. Immediately after Defendant made this gesture, Agent Corona saw Defendant and the alien separate, with the alien continuing northwest and Defendant moving eastbound.

After his arrest, Mr. Hernandez-Ramirez admitted he was a Mexican citizen with no documents allowing him to enter the United States. During trial, Agent Corona identified a photograph of Mr. Hernandez-Ramirez as the person he saw walking with Defendant on the date of arrest. Agent Burruel identified the same photograph as the person he saw climbing out of the dumpster. Mr. Hernandez-Ramirez, although designated as the "material witness," did not testify at trial because he absconded.

Delia Ramirez-Avelar, Mr. Hernandez-Ramirez' first cousin, testified that she was familiar with his family history. Ms. Ramirez-Avelar also served as a surety for Mr. Hernandez-Ramirez and posted a bond on his behalf. She testified that he was born in Guadalajara, Mexico, that his parents are Mexican citizens, and that he is not a United States citizen. Ms. Ramirez-Avelar testified that she travels to Guadalajara every summer to visit her grandparents and Mr. Hernandez-Ramirez' mother. Ms. Ramirez-Avelar did not recognize Defendant in court, nor had she ever heard his name.

Agent Diaz testified regarding his background and experience working for an undercover alien smuggling apprehension unit in downtown Calexico. Agent Diaz testified that he himself used to hide in the same dumpsters that were used in this incident, because the area was frequently used for alien smuggling. Agent Diaz also described how he used to follow illegal immigrants out of the dumpsters and sought to apprehend their foot guides, who frequently met the illegal immigrants in the Old Port area.

Immigration and Customs Enforcement Senior Agent Don Webster testified as an expert in alien smuggling techniques used in Imperial Valley. Agent Webster described the structure of small-scale alien smuggling organizations, including the role of foot guides in the downtown Calexico area. Specifically, Agent Webster described the stages of small-scale alien smuggling, beginning with recruiting the alien in another country, continuing to the stage of bringing the alien to the border area, then utilizing transporters or guides right at the border where the risk is greatest, and then transporting the aliens to a hub destination, such as Los Angeles. Once the aliens reach the hub, the organization receives money, then sends most of the money south towards the border, paying people along the way for their roles in the smuggling venture. Agent Webster stated that in his experience he had never encountered a case where someone playing a role in an alien smuggling organization had participated without expecting some sort of financial gain.

### III.   DISCUSSION

A.   Rule 29 Motion

Rule 29(a) requires a court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). In considering a Rule 29 motion, the Court "must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985) (internal quotation and citation omitted). At the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal, pursuant to Rule 29. The trial court may, as the Court did in this case, reserve decision on a Rule 29(a) motion. Fed.R.Crim.P. 29(b). If the Court does reserve decision, the Court must decide the motion on the basis of the evidence presented to the jury at the time the ruling was reserved. *Id.*

Now, viewing "the evidence [as it was] at the time the ruling was reserved," *Id.*, the Court **GRANTS** Defendant's motion for acquittal as to Count One and **DENIES** Defendant's motion for acquittal as to Count Two. The Court's reasoning is set forth below.

B.   Count One, Private Financial Gain

To be guilty under section 1324(a)(2)(B)(ii), a defendant must commit the offense "for the purpose of commercial advantage or private financial gain." 8 U.S.C. § 1324(a)(2)(B)(ii). The statute "does not require evidence of an actual payment or even an agreement to pay" but "merely requires that the offense [be] done for the purpose of financial gain." *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), overruled on other grounds, *United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (*en banc*) (private financial gain was found by alien's testimony that he expected he would have to pay for his transportation once he arrived in Los Angeles, the substantial evidence of the defendant's guilt, and the lack of any other possible explanation for Defendant's conduct);  see also *United States v. Schemenauer*, 394 F.3d 746, 751 (9th Cir. 2005) (testimony of alien regarding her arrangement to pay $3,000 for transportation into the United States, evidence that a known smuggler arranged the trip, and lack of any other explanation for defendant's participation in the revenue- producing scheme were held sufficient to support private financial gain element).

Moreover, since Defendant was charged as an aider and abettor with respect to Count One, the Government can satisfy the "private financial gain" element merely by proving that a principal, not necessarily the Defendant himself, committed the crime with pecuniary motive. *See e.g., United States v. Tsai*, 282 F.3d 690, 697 (9th Cir. 2002).  In *Tsai*, the Ninth Circuit found the following facts to be sufficient evidence of "private financial gain":

> Chen testified that her sister paid a considerable sum (which she had to borrow) to smuggle her into the United States.  Chen also testified that she did not know Tsai and that he was neither a relative nor a friend, which eliminated possible nonpecuniary motives for his actions. Sufficient evidence of financial gain therefore clearly existed. . . .
>
> Additionally, both [Defendant and his confederate] readily made substantial out-of-pocket payments (using their La Marie credit cards) for the aliens' expenses. . . .
>
> The government also presented expert testimony from two INS inspectors regarding the usual fees paid to escorts and the usual price paid by a smuggled alien.  These factors, plus the "lack of any other possible explanation" for Tsai's willingness to make several twenty-hour trips away from his sole proprietorship in Atlanta . . . are probative of the element of financial gain.

*Tsai*, 282 F.3d at 697.  *Compare, United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002) (evidence that the families of the aliens paid approximately $50,000 each to the smuggling operation was sufficient to satisfy the "private financial gain" element for defendant who escorted the aliens on the final leg of their journey because a reasonable jury could conclude that defendant was a member of the smuggling operation, and, therefore expected to reap some of its financial rewards).  The cases indicate that there is a rather low threshold of proof that exists in order to satisfy the "private financial gain" element.  With that said, the Government still did not met that threshold.  The Government was severely hampered by the absence of Mr. Hernandez-Ramirez at trial (whose testimony would have likely met the threshold).[1]

The Government argues that a "number of events revealed at trial creates a series of inescapable inferences leading to the rational conclusion that Defendant aided and abetted the bringing in of Hernandez-Ramirez for the purpose of financial gain."  Govt.'s Sup. Resp. & Oppo. to Def.'s Mot. at 7.  However, even considering the low threshold requirement established by the Ninth Circuit case law, the Government's "series of inescapable inferences" simply do not satisfy the "private financial gain" element.  The Government has failed to introduce any *direct* evidence of financial gain.

During trial, the Government, pursuant to F.R.Evid. 404(b), introduced evidence of two prior smuggling incidents to prove absence of mistake, motive, plan, opportunity and intent by the Defendant.  In one incident, Defendant was asked whether he was smuggling aliens.  Defendant purportedly replied, "of course, you know what I am doing."  In another incident, Defendant supposedly stated that "he'd smuggle in anyone, if the price is right."  Regardless, neither instance establishes proof of the present offense, and to hold otherwise would be an impermissible use of propensity evidence.

Separately, the Government's expert, Agent Webster, testified regarding the alien smuggling techniques used in Imperial Valley.  Agent Webster stated that he had never encountered a case where someone playing a role in an alien smuggling organization had

---

[1] The Court makes no determination as to whether the "financial gain" element could have been met despite the material witness' absence, rather that in this case, it was not met.

participated without expecting some sort of financial gain. Agent Webster also described the structure of small-scale alien smuggling organizations, including the role of foot guides in the downtown Calexico area. Agent Webster opined that the Defendant's role in the present offense was that of a "foot guide."

The Government argues that this testimony coupled with the Defendant's prior acts are sufficient to satisfy an inference of "private financial gain." The case law does not support that assertion. Expert testimony without additional direct evidence cannot can be used to satisfy the "private financial gain" element. *Cf. Tsai*, 282 F.3d at 697 (expert testimony *plus* evidence that monies were paid was sufficient evidence of financial gain); *see Yoshida*, 303 F.3d 1145 at 1152 (jury could infer that defendant expected some payment for her role in the offense *since* there was evidence that $50,000 was paid to the smuggling operation). Here, there was no evidence that Defendant received or would have received money in connection with the alien's transport. Relieving the Government of its burden to prove "private financial gain" would be clearly erroneous. *See United v. Munoz*, 412 F.3d 1043, 1046 (9th Cir. 2005) (financial gain is a necessary element of a 1324 offense and the statute requires the Government to prove that Defendant intended to derive a financial benefit from transport of the alien). Therefore, Agent Webster's conclusions cannot, without more, satisfy the "private financial gain" element. An expert's testimony as to a theoretical conclusion or inference does not rescue a case that suffers from an underlying insufficiency of evidence to convict beyond a reasonable doubt. *See United States v. Boissoneault*, 926 F.2d 230, 234 (2d Cir. 1991).

Absence of evidence cannot constitute proof beyond a reasonable doubt. A judgment of acquittal is proper under Rule 29(a) when no rational fact-finder could find, beyond a reasonable doubt, against the defendant. *United States v. Gil*, 58 F.3d 1414, 1423 (9th Cir.1995). Since the Government provided insufficient evidence as to the "private financial gain" element, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in Count One. Accordingly, Defendant's motion for acquittal as to Count One is **GRANTED**.

C. Count Two, Attempted Transportation

The Government did present sufficient evidence at trial to met its burden of proof as to Count Two. To be guilty under section 1324(a)(1)(A)(ii), a defendant must know or recklessly disregard that an alien has come to, entered, or remained in the United States in violation of law by transporting, or moving or attempting to transport or move, such alien within the United States by means of transportation or otherwise. *See* 8 U.S.C. § 1324(a)(1)(A)(ii). At trial, the Government presented evidence that: 1) Mr. Hernandez-Ramirez was an alien; 2) he was not lawfully in the United States; 3) the Defendant either knew or was in reckless disregard of such facts; and 4) Defendant attempted to transport or move Mr. Hernandez-Ramirez in order to help him remain in the United States unlawfully.

Specifically, there was evidence from the alien's cousin, Ms. Ramirez Avelar, regarding Mr. Hernandez-Ramirez' heritage. Ms. Ramirez- Avelar testified that her cousin's grandmother lives in Guadalajara, as do his parents. She further testified that her cousin was born in Guadalajara, and that he was not a United States citizen. Agent Corona also testified that Mr. Hernandez-Ramirez stated he was a Mexican citizen without documents to enter the United States upon arrest. Mr. Hernandez-Ramirez' identity was established by his cousin's identification of the photograph that was taken from his post-arrest interview. This identification was also corroborated by the agents who apprehended both Defendant and Mr. Hernandez-Ramirez. Eyewitness testimony further supported the fact that Mr. Hernandez-Ramirez did not have permission to enter the country. He was observed climbing the border fence at 3:15 a.m. on a Sunday morning, and hid in a dumpster 10-15 yards from the border for approximately 30 minutes.

Additionally, Defendant was observed walking directly to that dumpster. Agents Burruel heard the Defendant repeatedly yell for Mr. Hernandez-Ramirez to get out. When he failed to get out of the dumpster initially, Defendant waited. Defendant then spoke to taxi drivers and talked on his mobile phone and re-approached the dumpster. Once again, Defendant yelled "get out" to Mr. Hernandez-Ramirez, who was still hiding inside. Once Mr. Hernandez-Ramirez got out, Defendant gave him oral instructions, walked side-by-side with him, and gestured for him to

follow, thereby instructing him as to where to proceed.

Therefore, viewing this evidence in the light most favorable to the Government, the Court concludes that the jury could reasonably find that the Defendant was guilty beyond a reasonable doubt as to Count Two. Defendant's motion for acquittal as to Count Two is accordingly **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion for acquittal as to Count One is **GRANTED** and Defendant's motion for acquittal as to Count Two is **DENIED**.

**IT IS SO ORDERED**.

DATED: December 4, 2007

_____
M. James Lorenz
United States District Court Judge